**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **PAUL MOORE,** | * |
| Plaintiff, | * |
| v. | *   Case No.: 20-927-PWG |
| **REALPAGE UTILITY MANAGEMENT, INC.,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Paul Moore, is a residential apartment tenant who filed this putative class action lawsuit against Defendant, RealPage Utility Management, Inc. ("RealPage"), in the Circuit Court for Montgomery County in February 2020.  Compl., ECF No. 6.  Mr. Moore alleges that RealPage, acting as a collection agency for residential landlords in Maryland, improperly bills tenants like him for utilities owed to their landlords.  *Id.*  The case was removed to this Court in April 2020 on the basis of diversity jurisdiction.[1]  *See* Not. Removal 1, ECF No. 1.  Mr. Moore seeks declaratory and injunctive relief under Md. Cts. & Jud. Pro. §3-406; and asserts violations of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 *et seq.* ("MCDCA"); violations of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* ("MCPA"); and common law claims: money had and received; negligence; and unjust enrichment.

---

[1] Plaintiff is a resident and citizen of the State of Maryland, and RealPage is a corporation organized under the laws of Delaware, with its principal place of business in Richardson, Texas.  Not. Removal ¶¶ 6-7 (citing 28 U.S.C. § 1332(a)).  Additionally, there is diversity jurisdiction under the Class Action Fairness Act pursuant to 28 U.S.C. § 1332(d).

Pursuant to my Letter Order Regarding the Filing of Motions, ECF No. 8, RealPage stated its intention to file a motion to dismiss the claims predicated on the allocation of energy charges as well as the negligence claim. Pre-mot. Ltr., ECF No. 11. In response to the allocation of energy charges issue that was raised by RealPage, Plaintiff requests that a question be certified to the Maryland Court of Appeals regarding the proper construction of the statute at issue. Mot., ECF No. 15. The request to certify has now been fully briefed.[2] I have reviewed the filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiff's Motion is GRANTED.

## BACKGROUND

RealPage bills for and collects utility charges for residential landlords in Maryland, although Plaintiff alleges that it does not have a license to act as a collection agency. Comp. ¶¶ 3-5. Plaintiff alleges that the bills sent by RealPage for "allocated water service," "allocated sewer service," "gas hot water service," and "Administrative Service Fee" involve consumer claims under Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. §§ 7-101 *et seq. See, e.g.*, *id.* at ¶¶ 5, 15-16, 33.

In addition to complaining about the inappropriate fees charged by RealPage as part of its collection activities, Plaintiff also alleges that RealPage bills for "unlawful allocated energy charges." *Id.* at ¶ 9. RealPage allocates energy charges by using procedures and equipment that measures and reads the total energy costs consumed by a multiple residential unit building, measures the square footage of each residential unit, and then assesses the charges based upon the

---

[2] I construed Plaintiff's letter (ECF No. 15) as a motion to certify the stated question of law to the Maryland Court of Appeals (ECF No. 18); Defendant responded (ECF No. 21), and Plaintiff replied (ECF No. 22). Plaintiff also filed a notice of supplemental authority to which Defendant responded. ECF Nos. 23, 24.

square footage of the residential unit. *Id.* Plaintiff alleges that the Maryland Public Service Commission has not approved RealPage's energy allocation procedures and equipment. *Id.* at ¶ 10-11 (citing Md. Code Ann., Pub. Util. § 7-304); ¶¶ 50-56.

Plaintiff's purported Class and Subclass are defined as follows, excluding employees, officers, or directors of RealPage or its parent or subsidiary companies:

> [Class] All persons who paid an Administrative Service Fee assessed in a RealPage bill for a Maryland residence within three years prior to the filing of this Complaint.
>
> [Subclass] All members of the Class who paid for energy charges allocated to them in a RealPage bill for an apartment house residence within three years prior to the filing of this Complaint.

*Id.* at ¶¶ 12-14; 79-81. The unlawful energy allocation claim underlies, at least in part, all counts in the Complaint.

In response, RealPage asserts that all claims predicated on the allocation of energy charges are without merit because the property at issue, Seneca Bay Apartment Homes, was built in 1968, and the utility allocation statute that Plaintiff relies upon does not apply to properties built before 1978. RealPage Ltr., ECF No. 11.[3] Plaintiff disagrees with RealPage's interpretation of the statute at issue and asserts that no appellate decision has ever addressed the issue. Mot. 1-2. Plaintiff therefore seeks to certify the following question of law to the Maryland Court of Appeals:

> Does Md. Code Ann., Public Util. ("PU") § 7-304 prohibit the use of energy allocation equipment and procedures, which have not been approved by the Public Service Commission, to bill energy charges to tenants of properties built prior to 1978?

Mot. 1. I have deferred setting a briefing schedule for RealPage's requested dismissal motion until after ruling on the certification motion. Order, ECF No. 18.

---

[3] RealPage also asserts that the negligence claim fails because it owed no duty of care to Plaintiff that is actionable in a negligence claim. RealPage Ltr. 2-3. Resolution of that dispute does not turn on the issue that Plaintiff seeks to have certified.

3

## STANDARD OF REVIEW

Under the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. § 12-601 *et seq.*, this Court may certify a question of law to the Maryland Court of Appeals "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling [Maryland] appellate decision, constitutional provision, or statute . . . ." *See id.* § 12-603. Certification "ensur[es] the correct legal outcome, aid[s] in judicial economy, and manifest[s] proper respect for federalism." *Sartin v. Macik*, 535 F.3d 284, 291 n.6 (4th Cir. 2008). "Needless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

However, "it is well established that the decision to certify a question to the Court of Appeals of Maryland is not obligatory and 'rests in the sound discretion of the federal court.'" *Hafford v. Equity One, Inc.*, Nos. AW–07–1633, AW–06–0975, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008) (quoting *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974); *Boyster v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382 (4th Cir. 1981)). In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a "reasoned and principled conclusion." *Hafford,* 2008 WL 906015, at *4. "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984), *cert. denied,* 471 U.S. 1103 (1985)). "When this guidance is available the federal court should decide the case before it rather than staying and prolonging the proceedings." *Arrington v. Coleen, Inc.*, Nos. AMD-00-191. AMD-00-421, AMD-00-1374, 2001 WL 34117735, at *5 (D. Md. Mar. 29,

2001); *Marshall v. James B. Nutter & Co.*, RDB-10-3596, 2013 WL 3353475, at *7 (D. Md. July 2, 2013).

**ANALYSIS**

When deciding whether certification of a question of law is appropriate, a federal court must undertake a two-part inquiry. First, the court must consider whether the answer "'may be determinative of an issue in pending litigation.'" *Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234 (4th Cir. 2014) (quoting Md. Code Ann., Cts. & Jud. Proc.§ 12-603)). Second, it must "evaluate whether [the question may be answered] based on a 'controlling appellate decision, constitutional provision, or statute of [Maryland].'" *Antonio*, 749 F.3d at 234 (quoting Md. Code Ann., Cts. & Jud. Proc.§ 12-603).

The parties agree that an answer to the proposed question is determinative of multiple claims in this case. *See* Resp. 2 ("The answer to the question could result in a complete dismissal of many of Plaintiff's claims."). Therefore, I shall focus on part two of the inquiry. RealPage asserts that the question has already been resolved by Maryland's Court of Special Appeals' decision in *Legg v. Castruccio*, 642 A.2d 906 (Md. Ct. Spec. App. 1994). *Id.* Although *Legg* did not address Md. Code Ann., Pub. Util. § 7-304 specifically, it addressed § 7-301 (referencing its predecessor, Article 78, § 51(b)(1)). *Id.* RealPage argues that § 7-301 includes a specific cross-reference to § 7-304, making them reciprocal provisions of the same statutory scheme. *Id.*

RealPage quotes § 7-301(c)(3), which provides that "[t]he Commission may not authorize a gas company or electric company to service an occupancy unit or shopping center unit subject to this subsection unless the building or shopping center has individual metered service or submetering as provided under § 7-303 or § 7-304 of this subtitle for each individually leased or

owned occupancy unit or shopping center unit." Plaintiff notes that this cross-reference did not exist in § 7-301's predecessor statute that was discussed in *Legg*. Reply 3.

In *Legg*, the downstairs tenant alleged that she was not informed that she was responsible for the upstairs apartment's utility bill. 642 A.3d at 912. The *Legg* court's primary analysis revolved around unfair trade practices. As part of her argument, Legg asserted that her claim satisfied the requirements for an unfair trade practice because the landlord had violated a Maryland public policy. *Id.* at 912 (citing Md. Code Ann., Real Prop. § 8-211 (b) and (e)(1); Md. Code Ann., Art. 78 § 51(c); and Anne Arundel County Code, Art. 22, §§ 2–303, 2–404, and 2–501). In *dicta*, the *Legg* court noted:

> Article 78, § 51(b) is an important Code section not relied upon by Legg. Article 78 § 51 addresses, *inter alia*, the regulation of gas and electric service companies by the Public Service Commission. Subsection (b)(1) states, in pertinent part:
>
> The Public Service Commission may not authorize . . . a gas and electric company to service any new residential multiple occupancy building on which construction begins after July 1, 1978 . . . unless the building . . . *has individual metered service, or submetering as provided for under § 54G of this article, for each occupancy unit . . . that is individually leased or owned* . . . . [Emphasis added].

*Id.* at 918. The court determined that Art. 78 § 54G (predecessor to Md. Code Ann., Pub. Util. § 7-303 related to submetering) was inapplicable to Legg because it defined an apartment house as a building with more than two dwelling units. *Id.* at 919. The court then noted that Section 51(b)

> manifests a policy against shared metering situations; it does not, however, apply to buildings constructed before 1978, presumably because the General Assembly did not want to place the burden of retroactive application on landlords and owners. Section 51(b) was enacted in 1977 Md. Laws, Ch. 561 (House Bill 1493). A direct implication from this policy is that multiple occupancy buildings constructed prior to July 1, 1978 do not need to have individual metering, and, therefore, use of a single meter for more than one unit is not *per se* unfair.

*Id.* Ultimately, the court concluded that Legg's public policy arguments were unavailing. *Id.* at 919-20. Plaintiff points out that the *Legg* court does not discuss § 7-304's statutory predecessor, Art. 78 § 54H, which regulates energy allocation equipment and procedures, as opposed to the requirement for individual meters or submeters in multiple occupancy buildings. Mot. 2- 3. Plaintiff also notes that § 7-304 was separately enacted in 1988, a decade after the statute addressed in *Legg*. *Id.* at 3.

> Md. Code Ann., Pub. Util. § 7-304 states, in pertinent part:
>
>> Approval from the Commission is required before energy allocation equipment and procedures may be used by the owner, operator, or manager of an apartment house to determine the amount of gas or electricity used by an individual dwelling unit, if the amount of gas or electricity is determined by means other than by actual measurement of fuel or electric power consumed by the unit.
>>
>> An energy allocation system may not be used for direct billing of energy costs to the tenant of an individual dwelling unit unless the Commission approves the system in accordance with this subsection.

*Id.* at (b)(1), (b)(2). There are no Maryland appellate court decisions specifically referencing or interpreting this statute. *Legg*'s rationale for limiting § 7-301's requirement to post-1978 construction does not automatically apply to § 7-304. The *Legg* court presumed that "the General Assembly did not want to place the burden of retroactive application on landlords and owners." 642 A2d at 919. But the "retroactive application" referred to the physical installation of individual meters or submeters in multiple occupancy buildings. There is no corresponding burden placed by § 7-304, which requires approval of an energy allocation system used for direct billing if the energy consumed "is determined by means other than by actual measurement of fuel or electric power consumed by the unit." Rather, it requires advance approval of the use of any allocation

7

system that does not involve actual measurement of the fuel or electric power actually used by the dwelling unit.

Further, *Legg* is not a Court of Appeals decision, and its holding is unrelated to the statutory interpretation at issue, which makes it even less persuasive. *See Proctor v. Washington Metropolitan Area Transit Authority*, 990 A.2d 1048, 1055-56 (Md. 2010). Plaintiff also notes that the legislative history of the statute supports his interpretation rather than RealPage's interpretation. But I need not travel down the path of statutory interpretation here. There is no clear guidance from state law available to me to decide this determinative issue. Neither is there any guidance from other courts in this Circuit on this state law question. While I may be capable of resolving the question in the way I believe the state's highest court of appeals would rule, a foreseeable outcome of that resolution is an appeal resulting in the Fourth Circuit being asked to certify the question or definitively rule on a matter of Maryland state law. Therefore, in the interest of judicial economy and respect for federalism, I find that it is more appropriate for the Maryland Court of Appeals to provide the final authority regarding the proper application of Md. Code Ann., Pub. Util. § 7-304.

Accordingly, I shall GRANT Plaintiff's motion to certify the question to the Maryland Court of Appeals.

**ORDER**

For the reasons stated in this Memorandum and Order, it is this 11th day of February 2021, hereby ORDERED that:

1. Plaintiff's Motion to Certify, ECF No. 15, is GRANTED.
2. The parties are directed to confer and jointly provide within fourteen (14) days a proposed certification order pursuant to the privilege made available by the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. §§ 12-601 through 12-613, and Maryland Rule 8-305. Specifically, the

8

certification order must "state the question of law submitted, the relevant facts from which the question arises, and the party who shall be treated as the appellant in the certification procedure." Maryland Rule 8-305; *see also* Md. Code Ann., Cts. & Jud. Proc. § 12-606 (stating the required contents of a certification order).

3. Counsel shall confer and jointly inform the Court within fourteen (14) days whether either or both parties wish to proceed with resolving the licensing claims or if they prefer this case be stayed pending the outcome of the certified question.

                                                        _____/S/_____
                                                        Paul W. Grimm
                                                        United States District Judge